[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The Housing Authority of Norwalk brought this summary process action against Barbara Lee and Marcel Lee made returnable CT Page 7579 to the court on August 28, 1990 alleging serious nuisance in violation of Connecticut General Statute 47a-11 (g).
Marcel Lee failed to appear. Barbara Lee appeared through counsel for trial on August 26, 1991.
The parties agree that Barbara Lee entered into a written lease on August 1, 1989 until August 1, 1990 for premises known as 113 Suncrest Road, South Norwalk. The premises are part of Colonial Village owned by the Housing Authority of Norwalk. (Plaintiff's Exhibit "A") On June 1, 1990 she filed an application for a new lease (Exhibit "B"). On it she listed the members of her household as Marcel, Barbara ("Jr.") and Michael. Marcel, who was born on August 19, 1970, was arrested for the illegal sale of drugs. This sale took place on the Housing Authority premises at Suncrest Road, although not in the defendants' apartment. There had been an earlier arrest of Marcel Lee on August 9, 1988. Based on these arrests the Housing Authority brought the instant action.
In C.G.S. 47a-1 (g) "premises" is defined as ". . .a dwelling unit and the structure of which it is a part and facilities and appurtenances therein and grounds, areas and facilities held out for the use of tenants generally or whose use is promised to the tenant."
C.G.S. 47a-15 permits a landlord to bring an action to evict based on serious nuisance. Among other things, "serious nuisance" means "[C]onduct which presents an immediate and serious danger to the safety of other tenants or the landlord, or (D) using the premises for. . . the illegal sale of drugs."
Pursuant to C.G.S. 47a-11 (g) a tenant must "conduct himself and require other persons on the premises with his consent to conduct themselves in a manner that will not disturb his neighbors' peaceful enjoyment of the premises or constitute a . . . serious nuisance, as defined in section 47a-15." The plaintiff herein alleges that Marcel Lee's actions constituted a serious nuisance, an allegation conceded at trial by Ms. Lee. However, the nub of this case lies in the last sentence of 47a-15 which provides as follows:
 If the landlord elects to evict based upon an allegation, pursuant to subsection (g) of section 47a-11, that the tenant failed to require other persons on the premises with his consent to conduct themselves in a manner that will not constitute a serious nuisance, and the tenant claims to have had no knowledge of such conduct, then, if the landlord establishes that the premises have been used for the illegal sale of drugs, the burden shall be on the tenant to show that he had no knowledge of the creation of the serious nuisance. CT Page 7580
There was adequate testimony by the plaintiff's Director of Housing Services and by two Norwalk police officers, members of the Special Services Division evidencing Marcel Lee's arrests for drug sales. The first occurred on August 9, 1988, days before his eighteenth birthday. This arrest and the April 1990 arrest occurred on Suncrest Road, on property owned by the plaintiff. Barbara Lee, who presented as a reasonable, intelligent and sympathetic witness, testified that she first be came aware that her son had been arrested in connection with a drug offense when she went to court with him in connection with the August arrest. Since he was not yet eighteen, her presence was required. She learned at court that a bag of an illegal drug had been found near Marcel's "body"; until then she thought the charge pertained to the firing of a gun. His public defender told her that Marcel was named as an offender because the police found him close to the bag of drugs. She testified that she asked Marcel, and he denied any involvement in drug dealing. In September, 1988 Marcel was arrested on another charge of selling drugs although the locale was not on the plaintiff's property. Ms. Lee stated that until that arrest she did not note any indicia, as she understood them, of drug-dealing: he wore no fancy jewelry; one "wouldn't know from his dress", and she never saw or found money or drugs. In fact, he used to ask her for money. Ms. Lee admitted that she recognized the "possibility" that he could have been dealing drugs despite the excuses he made, but it was only a "possibility". As a result of this August arrest Marcel did not make bail and subsequently was jailed at the Bridgeport Correctional Center until November. Then, as part of a plea bargain and with his testimony against the dealer arrested with him, he was sentenced to little more than the time he served. He was released just before Christmas, 1988 when Ms. Lee received a telephone call to pick him up upon his release.
Ms. Lee testified that by now she knew of a law providing for the eviction of tenants who permitted drug sellers to deal in drugs on the premises. She therefore told him on the return trip that he would have to move out of her apartment after the holidays but that he could move in with her mother. He was "not happy", but in early 1989 he moved in with his maternal grandmother, Evelyn Lee. The latter testified that Marcel had come to live with her in early 1989 and that he slept and ate at her house. She said if he stayed out at night he would call and tell her where he was, and at no time did he indicate that he had returned to his mother's.
Later he went to live with his paternal grandmother in Boston. Barbara Lee stated that she agreed with this inasmuch as his paternal grandmother had "control over him", and his paternal uncles and cousins were close and, she intimated, good influences. He did not remain in Boston, but he did not return to live at Suncrest Road. His mother testified that she repeatedly stressed to him that he could not return to Colonial Village, even when she saw him with CT Page 7581 other youths and men congregating in Colonial Village. She was concerned that her younger children have a "roof over their heads" as he had had when he was their ages. She also testified to pushing him out the door bodily when he would return and get "nasty" about not returning home. She admitted that he had never physically abused her or threatened her, and that she never felt the need for obtaining a restraining order.
Corroborating some of her testimony was her neighbor, Doreen Hotellen. Both women shared a "duplex" wherein they shared common walls. Their back doors were adjacent and on those occasions when both doors were open Ms. Hotellen testified she could hear much of what was said if voices were raised. She could also hear movement through the walls. She recalled one occasion in June 1990 when Marcel visited the apartment and had an argument with Ms. Lee' s fiance, Steve McKinney. On that occasion he punched Steve into the china closet; she heard screaming and MS. Lee crying, and the police came. She also testified that MS. Lee requested that she keep an eye on the Lee apartment. She was aware that Marcel had moved out, and Ms. Lee had told her to call her mother or call the police if Marcel came to the apartment. She agreed that Marcel had not come home to live after he had been incarcerated in 1988, although he had visited on a few occasions of which she had knowledge.
Steve McKinney testified as to the altercation in June, 1990 after which he had obtained a restraining order against Marcel for the Suncrest Road premises. He stated that Marcel objected to moving out and on one occasion threw a television set, broke the microwave oven and swore. Mr. McKinney was present when Marcel left for his grandmother's in 1989. He packed his clothes, his stereo and his television. The witness testified further that in August of 1989 when Ms. Lee was in California, he was painting her apartment when he heard a plant fall over, He went downstairs and found that Marcel, believing no one to be home, had gained entry through a window. Mr. McKinney told him to leave, and, although he did not want to go, he subsequently left. Ms. Lee put a bar across the window after that incident.
In furtherance of her defense that she did not consent to Marcel's occupancy of the apartment, Ms. Lee testified that she had wanted to have Marcel's name removed from the lease. To this end she contacted Gloria Seed, an employee of the Housing Authority, in early 1989. She claims she was told that, in order to have his name removed from the lease, the plaintiff would need a document signed by a landlord. MS. Lee explained that Marcel was living with his grandmother who could write such a letter. She was informed that his grandmother's landlord would have to write the letter. Meanwhile Ms. Lee became ill from some unspecified illness for an unspecific time period; nevertheless, she spoke with people she thought had knowledge regarding housing matters, including Marcel's CT Page 7582 paternal grandmother who worked for the Boston Housing Authority. That grandmother wrote a letter in January 1990 stating that Marcel was living there. However, this letter did not suffice because it was not notarized and because the grandmother was not the landlord. As a result Ms. Lee testified that when she reapplied for her new lease, she included Marcel's name on the form because she could not remove him without evidence from Marcel's new landlord. Her testimony was not rebutted by any Housing Authority witness. The rules and regulations of the Housing Authority were not part of the record; the court, therefore, was unable to ascertain whether or not such a policy existed for an emancipated individual.
The court finds that all the witnesses were credible and none substantially contradicted another. The Housing Authority put on no witnesses who could testify that Marcel had lived in the apartment after Christmas 1988 or that MS. Lee had spoken of permitting her son to remain on the premises. It relied on the application form in which Ms. Lee had listed Marcel as a family member after his arrest for drug dealing. It also attempted to introduce a form from the Post Office which it contended indicated that Marcel never changed his forwarding address from the 113 Suncrest Road address. Ms. Lee admitted that Marcel received mail at that address but contended that it was unsolicited mail from colleges and the Navy. She stated that he received no bills or personal correspondence at the Suncrest Road address. The plaintiff also noted that Marcel's arrest records show Suncrest Road as his address. However, it was hampered by the absence of one police officer who might have testified as to why the address appeared. Since neither police officer could testify to that issue from his direct knowledge, the court did not consider the presence of the address to be conclusive as to the issue at hand.
Accordingly, the Court finds that the plaintiff did not meet its burden of proof that Ms. Lee consented to the presence of her son Marcel at the premises after she knew he was selling illegal drugs.
The court further finds that Marcel Lee created a serious nuisance on the premises. Judgement may enter for the plaintiff against Marcel Lee only.
Leheny, J.